The last case for argument is 13-2178, Pablo Cabrera v. Eric H. Holder, Jr. Okay, Mr. McAtee? Yes, Your Honor. Good morning. Good morning, Your Honors. You may proceed. May it please the court, counsel to the respondent, My name is Alex McAtee. I'm the attorney for the petitioner in this case. We're here because the government in this case is trying to get a second bite at the apple, okay? The first bite occurred a good 10 years ago, and they waited. They laid in wait 10 years to get that second bite at the apple. Régier Ducotte clearly bars the second bite, but regardless of that, the government still wishes to attempt to take that bite. Now, the facts are clear. There were two charging documents. The first served in 2003. The second served in 2013. Both charging documents shared the same exact evidence, and that's the problem. What's really egregious here is the time, separated by nearly a full decade. Only when the petitioner was released on probation did the government come back at him, re-arrest him, and charge him a second time. Now, even if they had re-arrested him the day after he won his appeal, it still would have been barred by Régier Ducotte. This simply deepens the necessity for the grant of this relief. Now, the real question that we have with the Régier Ducotte claim is whether they share the same cause of action. That was defined in Channer pretty directly, whether they're related in time, space, origin, and motivation. And the court in Channer basically looked back to the factual predicate that led to the state convictions, not simply to what was charged by the government at the time that the individual in that case was brought before the immigration court. And here, the time, space, origin, motivation of all the convictions, both I should say, are related. They cannot be pulled apart. One action led to two convictions. Those two convictions were decided by one court, and it was all for one action, simply driving a vehicle. Now, whether they are a convenient trial unit is an interesting question. Aren't they two separate things? I mean, one is the manslaughter, and another is tampering with the evidence, which seems to have different elements and different— I mean, I don't know what's in the record about what happened. And the issue is less with the criminal charges and more with the charges brought by the Department of Homeland Security. Now, they had evidence of both of those convictions, and each of those convictions could give rise and did give rise to various charges under the Immigration Nationality Act. They chose to present all evidence relevant to both state court convictions and then only go forward on one available charge under the INA, and that's their right. However, when all relevant evidence is present and you simply decide that you want to go with your best case or for whatever reason don't wish to bring the other charge that could have easily been supported by the evidence submitted to the immigration court, they should not be allowed to come back, whether it's a minute after they lose on appeal or ten years after they lose on appeal, to get that second bite of the apple. And this is a convenient trial unit. There's no question about that. This is all the relevant evidence on the record, and the simple requirement would be an amended charge and a brief argument about the second immigration charge that they could have lodged originally and that they eventually lodged a decade later. Now, where in the record are all of these facts and these convictions? Is it in this record? It is in the record. It is in the appendix, Your Honor. And in addition, it was all the documents supporting the original charging document with the immigration court as well as the same supporting evidence that was submitted with the second charging document. There was really no difference in the evidence submitted. The only difference was the charge they chose to bring in the second charging document with the immigration court. And that's exactly why this is a convenient trial unit. They had all the relevant testimony, evidence, disposition from the court, and they could have used it at that time to bring both charges. They don't have to do that under the INA. Well, let's take first. Do you believe that res judicata applies in the administrative proceeding here? It does. And as it was presented ñ How do you have to support that? It was ñ circuits have alleged as much. In addition, in the brief presented by ñ Who said that? What circuits? Second, third, fifth, Your Honor. Both in ñ I mean, Channer has shown that res judicata applies to administrative bodies and specifically to immigration courts. I thought those circuits kind of assumed it and went on and decided that it wasn't res judicata. I thought the only circuit that had said that it applies was the ninth. The Second Circuit has stated that it does apply, Your Honor, in the case of Murray, which is presented in my brief. And the circuits have agreed that res judicata can apply. However, in Channer, Duhaney, those courts declined to apply res judicata because of the facts. And, in fact, the majority of Channer and Duhaney focus very, very heavily on the facts. They note different factual predicates. What's the basis for the res judicata? It's statutory, constitutional, or the BIA's procedures and rules? Where does it come from? It doesn't come from the INA. It doesn't come from the Immigration Nationality Act or any of the statutes normally governing the immigration court. It comes from the circuits, Your Honor. It comes from the Eighth Circuit. And the Eighth Circuit has, in other cases, applied res judicata to administrative bodies. And in the respondent's brief, they asked the court to apply it flexibly. And we do agree that it should be applied flexibly. But those cases that demanded it be applied flexibly related to things such as Social Security determinations, when an individual went back to, you know, didn't go back to work when they should have or went back to work and were still drawn to Social Security. Let's assume you're right. What's the scope of the res judicata in an administrative proceeding like this? I mean, I'm just looking at the BIA opinion, which I thought was a very well-written opinion. And they assume there's res judicata applies that the Eighth Circuit would apply it. But they don't say that it does. They don't find any authority that it does. And I'm not sure that it is. And that's because we're arguing in a void, at least as it relates to res judicata applying to immigration court. And that's exactly why we're here. We need a determination as to how exactly res judicata should apply. And we have sister circuits providing us with very good guidance. Is it the breadth in a civil court that it would be, or is it somewhat flexible, or do we defer to the BIA to set the standards? The BIA should not be looked to, nor should the immigration judge be looked to, to set the standard because they live and breathe the INA. And if we're talking about the INA, then, of course, we give them Chevron deference. They get essentially to decide how the rule should be interpreted. This is a creature of the Eighth Circuit. We've applied res judicata to administrative bodies before within the Eighth Circuit under Social Security Administration determinations. Now, those determinations are things dealing with monetary issues. Those are not nearly as serious as immigration consequences. The respondent would like you to apply res judicata light, a watered-down version of res judicata. There are, however, no light immigration consequences, especially when we're talking about an individual like Petitioner who is a legal permanent resident. The greatest benefit that an immigrant can hold is legal permanent residence. And to take it away without the full force and effect of res judicata being applied in those types of proceedings I think is just patently unfair. It flies in the face of justice. It flies in the face of some semblance of finality. And in addition, it just violates – well, I shouldn't say violates. It's not any kind of good economy to do it. It's in the interest of judicial economy to have that type of finality. And again, at the entire time, Petitioner, until his second charging document, he was pro se. He was presented with all of his conviction documentation. He testified as to what happened that led him to be convicted in the criminal court. And he had a reasonable expectation that he would not be brought back in immigration court on the same evidence some ten years later. Now, again, the respondent would like you to apply a watered-down version of res judicata, but to do so would not be just. The application of res judicata should be commensurate with what's at stake. And again, here, what's at stake is the ultimate benefit for an immigrant in the United States, which is legal permanent residence. And if you look at the case law, it's fairly clear. We have the three cases that we're essentially arguing here don't fall in the circuit. The cases that apply to res judicata that we are using essentially are from the Second Circuit and the Third Circuit. In the Second Circuit, we have Channer and Murray. Now, Channer declined to apply res judicata not because they didn't believe res judicata should be applied to immigration court. They found the facts in the case insufficient to apply. And I agree. In Channer, the case was simply not good enough to apply res judicata. We're talking about two separate convictions from two separate courts, one federal, one state, different factual predicates. The immigration court in the first charging document did not have the evidence on record relating to the second offense, which existed at the time but simply was not made part of the evidence. And they shouldn't have to bring it. What's wrong with the Fourth Circuit's analysis in Johnson v. Whitehead where they granted deference to the BIA's use of res judicata? I would say that, again, granting deference to the BIA's use of res judicata would be inappropriate because, again, this is a creature of the circuit courts. The circuit courts apply res judicata to administrative bodies. Immigration is an administrative agency. But as cited in that case from a Supreme Court case, a basic tenet of administrative law is that agencies should be free to fashion their own rules of procedure. Certainly. And agencies do that. However, the legislators who create the law don't legislate in a void. They understand res judicata exists. And if they wish to defeat res judicata or other applicable laws which can come in collaterally to essentially bar subsequent suits, then it should be put in the INA.  Now, if the judge wishes to interpret, the immigration judge that is, wishes to interpret law established in the Eighth Circuit, of course he's free to do so. But we don't have that law. The judge is attempting to make a decision in a void that we have here in the Eighth Circuit. And that's not appropriate. That's why we're here today because we need some semblance of a rule for them to follow because this is not the INA. This is not what they live and breathe. This is something separate from what is their wheelhouse essentially. And, again, going back to Channer, had the Channer court had the facts that we have today, they would have barred the subsequent suit under res judicata. They didn't have those same facts. Different factual predicates leading to two different charges and none of the evidence of the second factual predicate was on the record at the time. I don't think the same judge's argument means an awful lot because that's just one judge handles two cases. And I agree with that. Why aren't the facts here, as Judge Grender asked you, when you have different elements, different facts to prove each of the cases and it goes off on one without the other? Why is that res judicata? And, again, because when they have all the relevant evidence on the record and choose not to charge on the evidence that they have available to them, all the facts, all the relevant disposition, investigation is there. They choose their best case, or for whatever reason, they don't bring in their charge. That is where res judicata lives. That is when it applies. And if they choose not to, that's fine. The INA specifically says they can bring charges whenever they want. However, if the facts are there – Well, Channer, you were looking at criminal under the double jeopardy argument and all that, but here it's administrative. Correct, and that's why it is given – They make a decision, we're going off on this one, and then come back and go off on the other one. I mean, what is wrong with that as a practical matter? And practically it's not a problem so long as we're not going back to review the same facts that they had on the record at the time. If they want to adduce testimony, if they want to submit evidence, they are free to do so. But when they submit all the relevant evidence, as in Murray, where the court had three marijuana convictions, two were used to charge the individuals in aggravated felon, the case was eventually lost by the government. Five days later, they refile saying he's an immigrant convicted of a controlled substance violation. The court rightfully noted, look, you had the convictions on the record. You had knowledge of them. You put them on the record. You could have brought an additional charge. You brought what you felt was your best case. That is it. You do not get to go back to the same facts over and over. If they were different factual predicates, I wouldn't be here today. If the facts weren't put into the evidence and weren't used to charge on the original charging document, we would not be making these arguments. But they were. They had the opportunity. It was all there. All they had to do was amend and make a single additional legal argument, which was supported by all the facts on the record in both charging documents. And they failed to do so. And that's where res judicata lives. That's why it should be applied. I see that I have a minute and 20 seconds I would like to reserve, if I could, for a response. You may. Thank you. Mr. Marsteller, good morning. Good morning. May it please the court, Eric Marsteller for the Attorney General. Opposing counsel essentially argues that the court should create kind of a top-down rules as to what the res judicata standard should be before the agency. And the government respectfully disagrees. It is precisely because the immigration judge and the board spend every day dealing with removal cases and working with cases involving the Immigration and Nationality Act that they have the expertise to understand what types of rules and procedures would be most useful and beneficial in the administrative proceedings. And we think that is a key reason why deference is owed. Look, the opinion here is not looking to their procedures. They're not saying we do or do not have res judicata. They're anticipating what we're going to tell them it is. That's correct, Your Honor. And so I know I ask the questions, but the administrative group, the BIA, has not decided this. They're looking to us to decide it. So why shouldn't we accommodate them and make a rule? Well, Your Honor, I think it's more that they just assume. Because generally the board has generally found some sort of res judicata to apply. And this court does have authority to consider whether whatever rule the board creates is consistent with the INA and the Constitution. Is there any rule? There is not a precedential rule in the board as to what the rule or an opinion. There's not a precedential opinion, no. Do you read the BIA as just saying it's looking, anticipating what we would say the rule is? It's a bit unusual, Your Honor. They say that they assume. Assuming the Eighth Circuit finds that res judicata applies, we find that it does not apply here is what the board did. It almost started with the in the alternative. It did not address directly the question. This is leading up to this question, which is you've made the argument and we've asked questions up here about, well, shouldn't this be left to the BIA or the agency? And yet they're not taking the reins on it. They're looking to us. So I don't see any deference that we would give at this point. But if they're truly looking and reading this opinion of theirs, or if they're really looking to get guidance from us, should we give it? Or should we wait for them to do it? I think the court can. Well, in the Eleventh Circuit in Dormescar, recently indicated, the government argued that res judicata did not apply in the administrative proceedings. And the court said they need not decide the issue because they could just assume it applied and decide the issues. And that's what the other courts have done. And so I don't think remand for a clear rule by the board is necessary here, because I think the court could just assume, as the board did, that res judicata applies, and then, assuming it applies, conclude that what the board did below was certainly within the bounds. Do you prefer that we did that, just assume it applies without setting a rule, and just say, okay, if it applies, and then analyze whether there's case on the facts and the indications that it does or does not apply? I don't think that's necessary, Your Honor. I think the court could determine whether it applies or whether it does not apply. But what we ask is if the court does conclude that res judicata applies, is that it conclude that the doctrine of the preclusion rules are applied flexibly, can be applied flexibly by the agency. And that especially in cases such as this one where the ground of removability was an aggravated felony, we think special deference is owed, and we think applying those standards to the general preclusion rules, we think that this case clearly has different indicia of operative facts regarding the underlying convictions, and that it was not improper for the board to conclude that res judicata should not apply in this case. Yeah, I think I hear what you're saying, but let me ask you this. What relief are you asking here? What do you want our judgment to be? Do you want us to assume if there's res judicata and then apply res judicata rules, or do you want us to decide the initial issue about whether res judicata exists under the INA? I understand, Your Honor. I think it's your first suggestion. I think we would ask that you assume that res judicata applies, as the board did, and then apply the res judicata standard. The board should really have the first determination as to if there's going to be a determination that res judicata does not apply to immigration proceedings, we think that should be made by the board in the first instance and not the courts. And to this point, the board has not addressed that determination in a presidential decision or an unprecedented one as far as I'm concerned. They generally don't address whether it applies or whether it does not apply generally. So, again, to clarify, we think the courts should just assume res judicata applies and leave for the board to reach a different determination should it decide to do so in a future proceeding. So are we assuming a strict res judicata or a res judicata light? What's the— Well, I don't think we want to— Does this survive either one of those? Well, we think it would survive either, but we think that the—I don't want to call it res judicata light. I think it's a flexibly applied res judicata where the larger concerns of the Immigration and Nationality Act are taken into account in determining whether the doctrine applies in this case. And secondly, under cases like Vermont Yankee, we think because the agency is in the best position to determine what procedures are most useful in adjudicating its cases, we think it is of deference to determining precisely how flexibly the doctrine should be applied. So that, and then secondly, we think because, as the Third Circuit said in Duhaney, because this alien is removable for having been convicted of an aggravated felony, Congress has given its clear intent that aggravated felons should be removed as expeditiously as possible, consistent with due process, and we think, therefore, that the doctrine should be applied even more flexibly in the case of aliens removable for aggravated felonies. And that's what the Board indicated in its decision as well. Applying it to this case, the Board, in its decision, cited this circuit's general standards for applying res judicata at the court level and indicated that it found that Mr. Cabrera's two convictions were not— I'm going to take you off track here. Please do. I apologize. If we do what you're suggesting is leave the initial decision, res judicata, to the agency and assume it, but then you're asking an answer to Judge Grender's question, is to give some deference to the agency in applying res judicata. Without us having the benefit of the agency's reasoning and application of some rule, you just want us to say, okay, we give some deference. But usually you give deference to an opinion. We're talking about a concept here. I guess that's what troubles me is what are we applying if we take the assumption res judicata applies, but what kind of res judicata it is and you want deference given to the agency, and yet the agency really hasn't told us anything other than just an application to an individual case. I agree, Your Honor. There is some tension there. And I still maintain, Your Honor, that the court can— because the result of this case is not really all that close, we don't think the court need handle the trickier questions at this point, and it can just decide that kind of whatever type of res judicata applies, the facts here, the two convictions contain totally separate elements and did not arise out of the same nucleus of operative facts. So we think because, regardless of the res judicata standard applicable, this case, the res judicata should not apply. We think that the court can proceed with that decision. However, should the court conclude that the case is closer or that the board need issue clearer guidance, then in that instance it may be necessary for the board to remand— or for the court, rather, to remand to the board for a clearer determination as to the rules regarding res judicata. Not flat out reverse it or grab the petition, but to remand? Well, yes. Well, I mean, there's really—the distinctions there are, I think, are minor. Generally— Okay, well, I probably beat this horse enough, so let's talk about applying res judicata to this case. All right, Your Honor. In this case, I've already touched on it. Mr. Caprera was convicted of manslaughter and tampering with evidence. There are no overlapping elements between the two convictions. As the board recognized, the two offenses occurred on the same day, and he was tried at the criminal court in the same proceeding. However, we believe that the critical operative facts are the facts of the conviction, and here we have two separate convictions that led to two different grounds of removability. It's important, we think, that the manslaughter conviction was alleged in the first notice to appear, and the charge in that first notice to appear was a crime of violence. In the second notice to appear, the criminal allegation was the tampering with evidence charge, and the crime was an aggravated felony for obstruction of justice. There's no overlap between the criminal ground relied upon and the charge of removability. So we think it was a reasonable interpretation to deny that those two convictions arose out of different nuclei of operative facts, and that regardless of the standard res judicata, the board probably found it did not apply in this case. We also point out . . . Tell me again why it's not the same nucleus of operative facts. How do we know that? Well . . . I know they're two different . . . they have two totally different elements. I agree with that. But they could have arisen out of the same facts, couldn't they? Well, we don't know the facts is part of the problem. It's not in the record. That's not in the record. There is a . . . That's what I was asking earlier. Counsel, where are the facts here? I couldn't see them. Mark Clark couldn't find them. There are some conviction records. There's the information and an amended information. There's a police report, but none of them touch at all upon the tampering with evidence charge. So it's . . . assuming you can even look at the facts generally, it's hard to know how they interrelate. More importantly here, in each of the proceedings, the agency only applied the categorical approach to determine whether the conviction qualified as an aggravated felony. Under the categorical approach, that applies when the statute is not divisible. In those circumstances, you don't ever look at the underlying facts. So in this case, there was no cause for the agency to ever consider the facts underlying each of the convictions. All it has before that, that it can really consider in this case, are the facts of the conviction. No, not the facts. I'm sorry. The actual . . . the fact that there was a conviction, not the facts underlying the convictions. So when you say nucleus of operative facts, you're saying we're just limited to two different charges, not the underlying facts. That's correct, Your Honor. Well, in this case, we don't know the underlying facts. But yes, you can know that there was a conviction 1 and a conviction 2, but we don't know what led to each of those convictions. And is it the petitioner's burden of proof to bring in the underlying facts . . . Assuming the . . . . . . to show that it's distinguished? Or is that your burden? Or is it the BIA's burden? No. Well, first . . . To be able to do an analysis and say, well, we have to see what all the facts are in each instance? Well, first off, that raises a couple of points. First off, it would be the petitioner's burden because he would bear the burden of proving because he's the one seeking res judicata. Secondly, it goes to show why flexibility is important in the administrative application of res judicata. If . . . What you could have is if you have a categorical conviction. This is categorically an aggravated felony. By having the res judicata inquiry involve the underlying facts, you're inviting more adjudication by the agency. You're inviting the parties to present more evidence and you'd have more things to consider. A flexible application of res judicata keeps things flexible, obviously, to be redundant. And it allows the agency to proceed efficiently where . . . And the Supreme Court has recently mentioned the agency's job is not to retry the criminal convictions in a different context. But the agency's job is not to retry the facts of the criminal conviction. It's merely to look at whether there was a conviction and what conviction it was. And so that kind of supports the idea that res judicata should be applied flexibly here. For the foregoing reasons, Your Honor, we think the Court should find that the Board properly found res judicata inapplicable and deny the petition for review. Thank you. Does Mr. McAfee have any time left? One minute and 15 seconds. Okay. All of that. Thank you, Your Honor. There is overlap. One, even Channer looked at the relevant factual occurrence as what actually led to the convictions. Secondly, the BIA in the first case applied the categorical approach because the immigration judge failed to do so under the manslaughter conviction. So they should have looked at the evidence, but they didn't. And that was the immigration court's fault in the first charging document. Additionally, if Duhaney . . . in the Duhaney case, they said they want to expedite removal for aggravated felons. And that's all the more reason not to have these cases come back up again solely because they wish to only bring their strongest case. Or for whatever reason, choose not to charge when all relevant facts and evidence are on the record. And again, the BIA is looking for guidance, and that's what they need. They cannot apply res judicata without some indication from the Eighth Circuit as to how it should be applied. Again, res judicata is a creature of the circuit courts. It is not a creature of the INA. It is not for the BIA nor for the IJ to make a determination about how res judicata should apply. And for that reason, we would ask that essentially this matter be terminated or remanded back down to the BIA to be sent to the immigration judge to be terminated, Your Honor. Thank you. Thank you both for your arguments, and thank you for coming to Omaha. Thank you. And I don't know if it's any nicer weather here. Your weather has been miserable this winter. Some of that global warming freezing us out. Okay, with that, I think we're completed with our Omaha session. Yes, Your Honor.